UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CARLOS OSMIN CRUZ-REYES, Movant, | § § § | |
| v. | § § § | Case No. 1:15-cv-071 (Criminal No. B-13-0423-1) |
| UNITED STATES OF AMERICA, Respondent. | § § | |

MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Before the Court is Carlos Osmin Cruz-Reyes's pro se "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (hereinafter Cruz-Reyes's "Motion" or "§ 2255 Motion"), which Cruz-Reyes filed on April 21, 2015, and amended on May 18, 2015. It is recommended that Cruz-Reyes's Motion be dismissed with prejudice. Additionally, it is recommended that the Court decline to issue a certificate of appealability.

I. Jurisdiction

This Court has jurisdiction over Cruz-Reyes's Motion pursuant to 28 U.S.C. § 1331 and § 2255.

II. Background and Procedural History

On July 3, 2013, Cruz-Reyes pleaded guilty to being unlawfully found in the

United States after deportation, having previously been convicted of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b). *See United States of America v. Carlos Osmin Cruz-Reyes*, No. 1:13-cr-0423-1, CR Dkt. No. 12-2.[1] On March 31, 2014, Senior United States District Judge Hilda Tagle sentenced Cruz-Reyes to 46 months of imprisonment. CR Dkt. No. 38 at 2. Judgment was entered on April 16, 2014. *Id.* Cruz-Reyes filed a direct appeal and, on June 9, 2015, the Fifth Circuit affirmed the district court's judgment. CR Dkt. Nos. 62, 63. Cruz-Reyes did not file a petition for certiorari in the United States Supreme Court. *See* Dkt. No. 1 at 2.

On or about April 21, 2014, Cruz-Reyes filed his instant Motion. Dkt. No. 1.[2] In his Motion, Cruz-Reyes raises four claims of ineffective assistance of counsel. *See generally* Dkt. Nos. 1, 8. Specifically, Cruz-Reyes claims his trial counsel, Hector Garza and Alfredo Padilla, were ineffective: (1) in "making him believe that the only line of defen[s]e was a plea-bargain;" (2) in failing to collaterally attack his previous deportation order under the Supreme Court's ruling in *United States v. Mendoza-Lopez*; and (3) in failing to investigate and collaterally attack his previous felony conviction for assault with a deadly weapon. *See* Dkt No. 1 at 14-19. In his motion to amend, Cruz-Reyes argues that his appellate counsel, Eric J. Davis, was ineffective by failing to speak with Cruz-Reyes regarding what issues to appeal. *See* Dkt. No. 8

---

[1] Hereinafter, Cruz-Reyes's criminal case docket entries ("CR Dkt. Nos.") will be referred to only by their docket entry numbers.

[2] Cruz-Reyes filed his motion prematurely, as his direct appeal was still pending. This Court set aside the motion for this reason. *See* Dkt. No. 4. However, this Court withdrew its decision following the Fifth Circuit's decision. Dkt No. 9. This Court then treated an objection to the original report and recommendation as a motion to amend his original Motion and ordered the Government to respond to Cruz-Reyes's newly amended Motion. *Id.*

at 1-3. The Government argues that Cruz-Reyes's claims are against settled law, and that he offers no factual support for his conclusory statements of entitlement to relief. *See generally* Dkt. No. 13.

### III. Legal Standards

**A. 28 U.S.C. § 2255**

Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If an error is not of constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

**B. Ineffective Assistance of Counsel**

The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them. *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399, 1405 (2012) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). Critical stages include not only trial, but

also pretrial proceedings — including the plea-bargaining process. *Laffler v. Cooper*, ____ U.S. ____, 132 S.Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Laffler*, 132 S.Ct. 1376, 1385-1386.

In *Strickland v. Washington*, the Supreme Court announced that in order to succeed on an ineffective assistance of counsel claim, a defendant must show both: (1) that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "the deficient performance prejudiced the defense," and shows "errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Courts need not even address both inquiries if the defendant does not sufficiently support one prong, nor must the court address the test in the same order. *Id.* at 697. Under this standard, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. As it is easy to second-guess counsel's performance after a conviction or adverse sentence, a fair assessment of performance requires reconstructing the circumstances of counsel's conduct from their perspective at the time rather than look towards the "distorting effects of hindsight." *Id.* at 689. As such, counsel is strongly presumed to have performed adequately, and made decisions using reasonable professional judgment. *Id.* at 690.

Additionally, the sufficiency of counsel's representation may be determined, and indeed substantially influenced, by the defendant's own statements and actions. *Id.* at 691. As stated by the Supreme Court, an attorney's actions are usually based on information supplied by the defendant, and, for example, investigative decisions or potential lines of defense are followed based upon what the client has said. *Id.* Counsel's conversations with the defendant may then be critical to properly assessing his actions in the course of litigation. *Id.*

### IV. Discussion

As noted above, Cruz-Reyes brings four ineffective assistant of counsel claims stemming from his conviction and direct appeal. *See* Dkt. Nos. 1, 8. As claims 1 and 3 allege similar, if not the same, conduct, they are discussed together.

#### A. Cruz-Reyes's Claims 1 and 3 that his Trial Counsel Failed to Defend Through Collateral Attack of His Prior Felony Conviction

In claim 1, Cruz-Reyes argues that counsel Hector Garza advised him that his only defense was entering into a plea agreement with the Government. *See* Dkt. No. 1 at 14. Cruz-Reyes goes on to argue that Garza failed to investigate his prior conviction. *Id.* Cruz-Reyes contends an investigation would have allowed Garza to collaterally attack that conviction by use of a self-defense claim or to determine whether a weapon was actually used. *See id.* In claim 3, Cruz-Reyes alleges that Garza was ineffective because "[Cruz-Reyes] consider that collateral attack to my previous criminal case . . . could have been another plausible line of defense, because until today I don't even know what actually happened[.]" *Id.* at 17 (error in

original). While Cruz-Reyes appears to describe his attorney's actions in his state criminal conviction, liberally construing his pleadings, it appears Cruz-Reyes alleges Garza was ineffective for failing to investigate, challenge, or argue these facts during sentencing. *Id.* From the Court's liberal construction of the pleadings, Cruz-Reyes also appears to allege in claim 1 that counsel Alfredo Padilla was ineffective because "the new attorney also failed to investigate my complains, so during sentencing they both failed to present strong arguments and rebuttable evidences… to void the sixteen point enhancement[.]" *See id.* at 14 (error in original).

Cruz-Reyes's claims of ineffective assistance of counsel fail because his trial counsel could not collaterally attack his prior felony conviction at sentencing. *See Daniels v. United States*, 532 U.S. 374, 382 (2001) ("The presumption of validity that attached to the prior conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under § 2255."); *Custis v. United States*, 511 U.S. 485, 497 (1994). Further, to the extent that Garza and Padilla could argue the facts of the prior conviction in Cruz-Reyes's favor, they did. *See* CR Dkt. Nos. 19 at 2-3; 48 at 7-8. Finally, the Court did consider that Cruz-Reyes may have not had a weapon while committing the prior felony conviction when computing his possible sentence. *See* CR Dkt. No. 48 at 10. The Court noted a discrepancy in the state court judgement; noting that, while Cruz-Reyes was found guilty of aggravated assault with a deadly weapon, there was no finding of a deadly weapon. *See id.* at 9-10. The Court then assumed for sentencing

purposes that his conviction was for aggravated assault, rather than aggravated assault with a deadly weapon. *Id.* at 10. However, the Court still found Cruz-Reyes qualified for the 16-level enhancement under §2L1.2(b)(1)(A)(ii) since an aggravated assault is an enumerated offense under the definition of a "crime of violence." *See* CR Dkt. No. 48 at 10; §2L1.2(b)(1)(A)(ii), Application Note (B)(iii). Therefore, Cruz-Reyes failed to show that either Garza or Padilla was ineffective, as his counsel did attempt to argue the facts surrounding his prior conviction. Cruz-Reyes also failed to show prejudice as disputing whether he used a weapon made no difference in the categorization of the offense for sentencing purposes.

### B. Cruz-Reyes's Claim 2 That His Trial Counsel Failed to Defend Through Collateral Attack of His Prior Deportation Proceeding

In claim 2, Cruz-Reyes argues that Garza was ineffective for failing to collaterally attack his prior deportation through the Supreme Court's holding in *United States v. Mendoza-Lopez. See* Dkt. No. 1 at 15. As with claims 1 and 3, the Court liberally construes claim 2 to include Padilla in his allegations. However, Cruz-Reyes has failed to demonstrate that Garza or Padilla was ineffective for failing to investigate or argue that his prior deportation proceeding is affected by *Mendoza-Lopez*, or the subsequent amendments to 8 U.S.C. § 1326 following the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

In *Mendoza-Lopez*, the Supreme Court held that when a determination made in an administrative proceeding plays a critical role in a subsequent imposition of a criminal sanction, such as sentencing a defendant convicted for illegal reentry into the United States after deportation, there must be some opportunity for meaningful

review of that administrative proceeding. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987). The Supreme Court explained that, at a minimum, this meant that some means of judicial review must be made available in order to challenge defects in the proceeding. *See id*. After *Mendoza-Lopez*, Congress passed the AEDPA, which amended 8 U.S.C. § 1326 to provide for a collateral attack against the validity of a deportation order only if: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

The Fifth Circuit has interpreted *Mendoza-Lopez*, and the changes to § 1326, to require a litigant wishing to collaterally attack a deportation proceeding to show: "(1) the removal hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice." *See United States v. Cordova-Soto*, 804 F.3d 714, 718-19 (5th Cir. 2015). A showing of prejudice requires that "'there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'" *Id*. at 719. Additionally, litigants must support all three prongs, and a failure to support one prong precludes a court from having to consider the others. *Id*.

Here, Cruz-Reyes provided no information allowing the Court to determine Garza or Padilla could have successfully challenged the validity of his prior

deportation hearing. *See* Dkt. No. 1 at 15-16. Instead, Cruz-Reyes only recites the facts and holding of *Mendoza-Lopez* in his Motion. *See id.* Cruz-Reyes does not state any information regarding: (1) what took place at the hearing; (2) what he told his attorneys; and (3) how even a hypothetical procedural deficiency in his prior deportation proceeding prejudiced him. Cruz-Reyes does not allege any sort of deficiency in that proceeding or allege providing trial counsel with any information that would reasonably lead an attorney to investigate the proceeding's validity. Thus, for the reasons above, neither Garza nor Padilla was ineffective for failing to collaterally attack the validity of Cruz-Reyes's prior deportation.

### C. Cruz-Reyes's Claim 4 That His Appellate Counsel Was Ineffective By Failing to Contact Him

Cruz-Reyes claims that his appellate counsel, Eric J. Davis, also provided ineffective assistance. He specifically argues that Davis did not introduce himself, in violation of ABA standards requiring counsel to confer with clients, promptly provide advice, and conduct appropriate factual and legal investigations. *See* Dkt. No. 8 at 2-3. Cruz-Reyes appears to argue that representation occurred without his knowledge, and ended with the filing of his direct appeal. *See id.* at 1.

Appellate counsel is held to the same *Strickland* standard, but in *Penson v. Ohio*, the Supreme Court held that actual or constructive complete denial of appellate counsel created a presumption of prejudice. *See Penson v. Ohio*, 488 U.S. 75, 88 (1988). However, appellate counsel is not required to confer with a client about the issues presented on appeal, regardless of any preferred practice. *See Hooks v. Roberts*, 480 F.2d 1196, 1196 (5th Cir. 1973). Appellate counsel renders

effective assistance if they "master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal." *See McCoy v. Court of Appeals of Wis.*, 486 U.S. 429, 438 (1988); *Rose v. Johnson*, 141 F. Supp. 2d 661, 702 (S.D.Tex. March 26, 2001).

Here, Cruz-Reyes's allegations are conclusory and vague. *See* Dkt No. 8 at 1-3. The thrust of his allegations are conclusory statements claiming his attorney violated three ABA standards of professional responsibility, the Sixth Amendment, and the Due Process Clause. *Id.* at 2. However, Cruz-Reyes does not support these claims. He only argues he was not notified regarding the appointment of appellate counsel, and that Davis did not introduce himself. *Id.* at 2. While Cruz-Reyes does articulate that he, understandably, feels abandoned or left in the dark by his appellate counsel, he does not allege that Davis failed to provide effective assistance as described in *McCoy*. *See id.* at 1.

In Cruz-Reyes's appellate brief, Davis raised two points of error related to the sentencing issues Cruz-Reyes brings in his instant Motion. *See* CR Dkt. 63 at 2-3. In fact, Cruz-Reyes's first claim on appeal specifically argued that, when determining his criminal history, the trial court failed to consider his version of the facts regarding his prior conviction and his motives as to why he returned to the United States unlawfully. *Id.* at 2. Cruz-Reyes's second claim on appeal alleged that the trial court erred in denying a downward variance pursuant to 18 U.S.C. § 3553(a). *Id.* at 3. These claims raised on appeal largely mirror Cruz-Reyes's claims in his instant § 2255 Motion regarding his underlining felony conviction. While they do

not collaterally attack the validity of his prior conviction, Cruz-Reyes's claims are directed towards issues the trial court could have considered at sentencing. Therefore, Cruz-Reyes has not shown that Davis provided ineffective assistance of counsel. Davis included in Cruz-Reyes's appellate brief carefully chosen and non-frivolous issues to the appellate court. Further, Cruz-Reyes has not shown prejudice by Davis failing to confer with him, or for failing to bring any other issues for consideration on appeal.

## V. Certificate of Appealability

A certificate of appealability shall not issue unless the petitioner/movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (internal quotations and citations omitted). Said another way, where claims have been dismissed on the merits, the movant/petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. at 484. Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its

procedural ruling." *Id.*

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability should not issue in this case as Cruz-Reyes has not made a substantial showing of the denial of a constitutional right.

## VI. Recommendation

It is recommended that Cruz-Reyes's Motion be dismissed with prejudice. It is also recommended that the Court decline to issue a certificate of appealability.

## VII. Notice to Parties

A party's failure to file written objections within fourteen days after being served with a copy of the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation shall bar that party, except upon grounds of plain error, from attacking those factual findings and legal conclusions that the district court accepts on appeal, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 5th day of April, 2016.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**